J-A19018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID GEORGE | |
| Appellant | No. 504 WDA 2014 |

Appeal from the Judgment of Sentence February 11, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0016817-2012

BEFORE:  BENDER, P.J.E., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.: **FILED SEPTEMBER 25, 2015**

David George was charged with rape and indecent assault against a 10 year old child, N.M.  In George's first trial, the jury found him guilty of indecent assault, but the jury deadlocked on the rape charge.  In his second trial, the jury acquitted him of rape.  The trial court sentenced George to 42-84 months' imprisonment for indecent assault.  He filed timely post-sentence motions, which the court denied.  George filed a timely direct appeal, and both George and the trial court complied with Pa.R.A.P. 1925.

For the reasons that follow, we remand for a hearing on whether the Commonwealth's expert testimony on the behavior of sexual abuse victims is admissible under **Frye v. United States**, 293 F. 1013 (D.C.Cir.1923).

George raises two issues in this appeal:

1

1. Did the lower court err in upholding the constitutionality of 42 Pa.C.S. § 5920,[1] as it clearly and plainly infringes upon the judiciary's exclusive rulemaking power regarding courtroom procedure?

2. If [42 Pa.C.S. §] 5920 withstands a constitutional challenge, did the lower court abuse its discretion by admitting expert testimony that failed to satisfy the requirements of [Pa.R.E.] 702[2] [] and failed to satisfy a *Frye* analysis?

_____

[1] 42 Pa.C.S. § 5920 provides in relevant part:

**(b) Qualifications and use of experts.--**

(1) In a criminal proceeding [relating to sexual offenses], a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S. § 5920(b).

[2] Pa.R.E. 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

*(Footnote Continued Next Page)*

Brief For Appellant, at 4.

For purposes of this appeal, the two crucial witnesses against George were N.M., the alleged victim, and Jacqueline Block Goldstein, the Commonwealth's expert witness on sexual abuse victim behavior.[3] We summarize each witness's testimony below.

**N.M.'s trial testimony.** N.M. testified that George was her mother's boyfriend, and George was around N.M. "too many times to count." Trial Transcript, at 28-29.[4] One night in 2010, N.M.'s mother was not home, and she was at home with George and her brothers. *Id*. at 29. She fell asleep in her mother's room while her brothers were in a different room watching television. *Id*. at 45. She woke up later with "David George's penis in my vagina" but did not feel his penis enter her vagina (contradicting her testimony during the preliminary hearing that she felt his penis enter her). *Id*. at 32, 46-47. She saw George on top of her, moving back and forth,

*(Footnote Continued)* —————————————

> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> (c) the expert's methodology is generally accepted in the relevant field.

*Id*.

[3] George did not testify during trial.

[4] The two days of trial proceedings are in one transcript.

and her shorts and underwear were around her ankles. *Id*. at 32-33. She pushed George off of her, ran into her room, shut the lights off, and closed the door. *Id*. at 33. She was not bleeding. *Id*. at 50. George opened her bedroom door, stuck his head in, and said: "Don't tell nobody." *Id*. at 56. She kept her clothes on until showering the next morning, and she and her mother had an uneventful breakfast with George. *Id*. at 51. Her mother washed her clothes later. *Id*. at 34.

N.M. testified that the incident occurred in 2010, but she acknowledged telling an interviewer at Children's Hospital that it took place in 2011. Trial Transcript, at 42. She testified that she told her cousin, Taquayah, about the incident "a couple of weekends after," but instructed Taquayah not to tell anybody. *Id*. at 35-36. Taquayah eventually disclosed N.M.'s report to N.M.'s mother, who contacted the police. *Id*. at 36-37. N.M. did not know the date she told her mother or Taquayah about the incident. *Id*. at 43. When N.M. was with her mother and Taquayah, Taquayah asked why N.M. had not told her mother before, and N.M. told her mother that the incident never happened. *Id*. at 44.

On an unspecified date, N.M. and her mother went to Allegheny General Hospital, and then Children's Hospital, where a doctor examined N.M. Trial Transcript, at 37-38. N.M. returned to Children's Hospital at a later date for another physical and verbal examination, and she later told a detective about the events. *Id*. at 39.

**Goldstein's pretrial testimony.** Prior to trial, George filed a motion in limine to preclude Goldstein's testimony. During a hearing on the motion in limine, Goldstein testified that she is the Associate Director and Child Forensic Interview Specialist at the Philadelphia Children's Alliance, which provides forensic interviewing, victim support services, and on-sight health services for children who allege sexual abuse. N.T., 6/24/13, at 5. She has received a Bachelor of Arts in psychology and a Masters degree in Social Work. *Id*. at 6. Not only has she conducted as many as 1,500 forensic interviews, but she trains school officials about dynamics of sexual abuse cases and has been called many times as a guest lecturer at universities. *Id*. at 9, 12-13. She has co-authored a chapter currently in publication through Pittsburgh Oxford University Press on the dynamics of child sexual abuse, particularly the Child Sexual Abuse Accommodation Syndrome ("CSAAS"). *Id*. at 15. She is a member of multiple professional organizations on child abuse. *Id*. at 17-18. Though she has come into contact with around 6,000 cases in her career, she testified "there's no one typical pattern of behavior." *Id*. at 23.

On cross-examination, Goldstein admitted having no clinical, psychiatric or sociology-type degree. N.T., 6/24/13, at 31. She was aware of the work of Roland Summit, who developed CSAAS in 1983, and she agreed that CSAAS has come under heavy criticism in the last 30 years on the ground that it lacked any statistical or numerical component to support Summit's conclusions. *Id*. at 31-33. She testified: "There are concerns

about that; and, again, the misuse of the term 'syndrome' with it, that it was misused in terms of diagnosing children that have been abused." *Id*. at 33. Goldstein was familiar with a paper written by Summit stating that CSAAS was never meant as a diagnostic tool. She was asked if Summit stated: "Had I known the legal consequences of the word 'syndrome at the time, I might have chosen a better name, like Child Sexual Abuse Accommodation Pattern to avoid any pathological or diagnostic implications." Goldstein answered: "Yes, absolutely." *Id*. at 33-34.

Goldstein was not familiar with Dr. William O'Donahue, Chair of the Psychology Department at University of Nevada, and one of the leading critics of CSAAS. N.T., 6/24/13, at 34-35. Dr. O'Donahue contends that the entire pattern Summit attempted to utilize was based on myth rather than observation. *Id*. Goldstein was not familiar with Dr. O'Donahue's assertions in a 2012 Scientific Review of Mental Health article that CSAAS has not undergone any scientific testing in the quarter century since its conception, and that no published peer-review articles support its accuracy. *Id*. at 35.

Goldstein's report in this case stated that "most children who have experienced child sexual abuse never disclose their experiences." N.T., 6/24/13, at 36. Defense counsel asked Goldstein what constitutes "most," and she responded: "It's a good question. There's no specific number as I read recently." *Id*. Her report also said that "many do not disclose right away." *Id*. When asked what constituted "many," Goldstein testified that she "[did not] know of one specific number that's been reached through all

of those studies." *Id*. at 37. Goldstein knew that the Governor's task force concluded that of the 24,378 reports of suspected abuse within Pennsylvania since 2011, only 14% of these accusations were deemed "substantiated," while 20,970 — 86% of all accusations — were unfounded. *Id*. at 37-38.

According to Goldstein, of the 1,500 forensic interviews she performed, "it's rare that they would disclose immediately." N.T., 6/24/13, at 40. Asked to defined "rare" with statistics, she responded, "I can't define with a hard statistic." *Id*. On the other hand, she testified that a University of Southern California study indicated that 75% of those surveyed in the United States did not tell anyone about abuse in their childhood. *Id*. at 42. She then answered "yes," or "correct" to the questions: "Some are consistent throughout?" "Some are constantly inconsistent?" "Some offer a story and then recant, right?" "Some don't recant?" *Id*. at 44.

Counsel for George argued that Goldstein's testimony is inadmissible under *Frye*. The trial court answered that 42 Pa.C.S. § 5920 supersedes both *Frye* and Pa.R.E. 702, rendering *Frye* inapplicable. Counsel for George replied that Pa.R.E. 702 augments section 5920 and requires the Commonwealth to

> not only establish [that the evidence] is beyond what the average layperson fully understands and comprehends, but that the methodology used, must also be generally accepted in the particular field … I don't think the Legislature by its very nature can simply ignore Rule 702 and say, if the Court feels her qualifications are, otherwise, acceptable, that then the Commonwealth need not then satisfy that it's generally acceptable.

N.T., 6/24/13, at 26-27. The trial court declined to apply **Frye**, denied George's motion in limine and permitted Goldstein to testify as an expert at trial.

**Goldstein's trial testimony.** Goldstein testified for the Commonwealth as an expert in "victim behavior". She testified that the

> vast majority of people who have experienced child sexual abuse never disclose, particularly to authorities. So when they look at the studies of adults with confirmed abuse ... over 90 percent of them state that as kids they never said anything ... [a]nd those that do say that something happened often don't tell right away.

Trial Transcript, at 90. She stated that children who initially deny abuse often claim abuse later: "We see it all the time. They're just not psychologically ready to talk about what has happened." **Id**. at 91. Children are able to recall child abuse by "recall[ing] the specific … act. The sexual act. Or they'll encode something that was particularly worrisome or scary to them because that's what was important in the moment. Peripheral details that they weren't really focused on don't get encoded in their memory." **Id**. at 93. Children abused by someone close to them "are correlated with less disclosures, so they don't disclose as much. When they do disclose, they delay the disclosure longer." **Id**. at 94.

Goldstein based her opinion on the "combination of experience and research, synthesis of literature." Trial Transcript, at 86. She admitted never having been the leader in any research or having conducted any independent research. **Id**. at 86-87. She has never formulated a hypothesis and subjected it to testing, or written a study or opinion

regarding this material subject to peer review. *Id*. at 87. Nor could she state to a degree of certainty the specific number of children that waited to disclose. She claimed she could "approximate a percentage" but acknowledged she does not "currently track the number that delay." *Id*. at 100. She could only say that some children wait to tell, and some children do not. *Id*. at 103. She added that it was "absolutely true" that delayed disclosure is not limited to truthful accusations. *Id*. at 101. There "certainly" were reasons somebody might fabricate abuse, most commonly when a preteen or teenager makes allegations to deflect attention from their own misconduct. *Id*. at 102-03. Some children are consistent about the core aspects of their allegations, while some are inconsistent. *Id*. at 103-04.

George's first argument on appeal is that 42 Pa.C.S. § 5920 is unconstitutional under Article V, § 10(c) of the Pennsylvania Constitution. This claim fails because we recently held in ***Commonwealth v. Carter***, 111 A.3d 1221 (Pa.Super.2015), that section 5920 is constitutional under Article V, § 10(c). ***Carter*** reasoned:

> Section 5920 is really a rule regarding the admissibility of evidence, not a procedural rule. Furthermore, it is not in direct conflict with any existing rule of the Pennsylvania Supreme Court. Appellant claims it conflicts with Pa.R.E. 702, in that the reasons why a child may not promptly report a sexual assault is not beyond the ken of the average layperson. Appellant also cites to ***Commonwealth v. Dunkle***, [] 602 A.2d 830, 837 (1992) ("Not only is there no *need* for testimony about the reasons children may not come forward, but permitting it would infringe upon the jury's right to determine credibility.") (emphasis in original) (citations omitted). ***Dunkle*** held that it is error to allow expert testimony on the issue of prompt

complaint, which impermissibly interferes with the jury's function to judge credibility. *Id.* at 837–838. **See also*, e.g.,* **Commonwealth v. Alicia***,* [] 92 A.3d 753 (2014) (holding that expert testimony on the phenomenon of false confessions would impermissibly invade the jury's exclusive role as the sole arbiter of credibility).

Appellant argues that our [S]upreme [C]ourt has ruled on precisely this issue, in an area specifically consigned to its authority ... However, **Dunkle** predates Section 5920 and was not based on constitutional grounds but on existing case law and rules of evidence. As such, we determine that Section 5920 does not violate separation of powers.

*Id*. at 1223-24.[5]

George's second argument on appeal is that the trial court abused its discretion by failing to hold a **Frye** hearing before permitting Goldstein to present expert testimony on victim behavior. We conclude that the trial court abused its discretion by failing to apply **Frye**.

Under **Frye**, "novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community." **Grady v. Frito-Lay, Inc.**, 839 A.2d 1038, 1046 (Pa.2003). In applying **Frye**,

we have required and continue to require that the proponent of the evidence prove that the methodology an expert used is generally accepted by scientists in the relevant field as a method

---

[5] Our Supreme Court is presently reviewing the constitutionality of section 5920 in **Commonwealth v. Olivo**, 127 MAP 2014. Because **Olivo** remains undecided as of this date, our decision in **Carter** remains binding precedent. **See Marks v. Nationwide Ins. Co.**, 762 A.2d 1098, 1101 (Pa.Super.2000) (decision of Superior Court remains precedential until it has been overturned by Supreme Court).

for arriving at the conclusion the expert will testify to at trial. This does not mean, however, that the proponent must prove that the scientific community has also generally accepted the expert's conclusion. We have never required and do not require such a showing. This, in our view, is the sensible approach, for it imposes appropriate restrictions on the admission of scientific evidence, without stifling creativity and innovative thought.

Under Pa.R.E. 702, the *Frye* requirement is one of several criteria. By its terms, the Rule also mandates, inter alia, that scientific testimony be given by 'a witness who is qualified as an expert by knowledge, skill, experience, training or education....' Pa.R.E. 702. Whether a witness is qualified to render opinions and whether his testimony passes the *Frye* test are two distinct inquiries that must be raised and developed separately by the parties, and ruled upon separately by the trial courts.

As to the standard of appellate review that applies to the *Frye* issue, we have stated that the admission of expert scientific testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless the trial court abuses its discretion.

*Grady*, 839 A.2d at 1045-46.

In this court, unlike in the trial court, the Commonwealth concedes that expert testimony on victim behavior is inadmissible unless the Commonwealth proves in the trial court that such testimony satisfies *Frye*. Brief For Appellee, at 32-33 (acknowledging that satisfying section 5920 is not enough, absent precedential ruling by an appellate court that science is now sufficiently established and has gained general acceptance by relevant scientific community, or full evidentiary hearing at which Commonwealth meets its burden of proof under *Frye*). The Commonwealth further asserts, however, that the trial court's Pa.R.A.P. 1925 opinion demonstrates that Goldstein's testimony was admissible under *Frye* standards used in other

states, and therefore the court's decision to admit Goldstein's testimony must be correct under Pennsylvania's application of *Frye*. Alternatively, the Commonwealth contends, we should only remand this case for a *Frye* hearing instead of a new trial.

We agree with both parties that it is necessary for the Commonwealth to satisfy *Frye*, and we further hold that the trial court abused its discretion by failing to apply *Frye* to Goldstein's testimony. But because of the importance of Goldstein's testimony in this case, we decline the Commonwealth's invitation to resolve the *Frye* issue simply by reviewing the decisions in the trial court opinion. Instead, we direct the trial court to hold a new evidentiary hearing in which both parties have the opportunity to present testimony on whether expert testimony on victim behavior is admissible under *Frye*. The Commonwealth will bear the burden of demonstrating that such testimony is admissible under *Frye*. *See Grady*, 839 A.2d at 1045. If the trial court determines that the Commonwealth has failed to meet its burden, it should vacate George's judgment of sentence, order a new trial and exclude expert testimony on victim behavior from evidence. If the court determines that the Commonwealth has met its

burden, the court should deny a new trial and leave George's judgment of sentence intact without prejudice to the appellate rights of both parties.[6]

Remanded for further proceedings in accordance with this memorandum. Jurisdiction relinquished.


Judgment Entered.

_____

_____

[6] **Commonwealth v. Arenella**, 452 A.2d 243 (Pa.Super.1982), provides considerable guidance in fashioning this remedy. The defendants in **Arenella** appealed their convictions for possession with intent to deliver marijuana, alleging that the trial court improperly denied their request to have independent expert examination of the substances in question to determine whether they were in fact marijuana. The defendants also alleged ineffectiveness assistance of counsel (because this appeal took place before our Supreme Court ruled that ineffectiveness claims must await PCRA proceedings). The **Aranella** court held:

> In sum, we would remand these cases for two purposes: (1) expert examination by both appellants of the alleged controlled substances, and (2) an evidentiary hearing to dispose of appellants' ineffectiveness claims as discussed in this opinion. If, following the examination and the evidentiary hearing, it is determined that the substances are not marijuana or that counsel's failure to object was, in either instance, unreasonable, a new trial must be granted. Alternatively, in the event that the results of the examination and the evidentiary hearing obviate the need for a new trial, the present adjudication is without prejudice to the appellate rights of both parties following the lower court's disposition on remand.

**Id**. at 248. We have adapted **Aranella's** roadmap for use in the present case.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/25/2015</u>